## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LORENZA C. MAREK,        ) | |
| )            | |
| Plaintiff,        ) | |
| )            | |
| v.                                   ) | Case No. 08-1036-WEB |
| )            | |
| WAL-MART STORES, INC.,        ) | |
| )            | |
| Defendant.        ) | |
| ─────────────────────────) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on (1) plaintiff's motion to compel (Doc. 41) and (2) defendant's motion for a protective order (Doc. 45). For the reasons set forth below, both motions shall be DENIED.

### Background

Plaintiff was hired as an assistant manager for Wal-Mart in 2002. Highly summarized, she alleges that Wal-Mart terminated her in 2007 because of her race (Hispanic) and national origin (Mexico). She also contends that Wal-Mart retaliated against her for complaining to management about discriminatory treatment. Wal-Mart denies her allegations of discrimination and retaliation and contends that plaintiff was terminated for falsifying time records. Specifically, Wal-Mart contends that she manipulated an "overnight"

employee's time record to show that the employee reported to work the day after he actually began working. Plaintiff admits that she shifted the employee's "time punches" but argues that the employee was paid the correct amount and that her modification to the records is consistent with her 2002 management training.[1]  Additional facts and arguments are set forth in the following discussion of plaintiff's motion to compel.

## Plaintiff's Motion to Compel

Wal-Mart characterized plaintiff's time keeping modification as "gross misconduct–Integrity Issue" in her termination records. To counter this argument, plaintiff seeks discovery showing that the allegation of "gross misconduct" is merely a pretext for discrimination and retaliation. Specifically, plaintiff alleges that during her *2002* management training she was instructed by Wal-Mart "to not clock in on Sunday" so that she would not be paid a "Sunday differential." Doc. 42-7 (April 29, 2002 letter from Wal-Mart's

---

[1]
     Plaintiff contends that the adjustment was necessary because of Wal-Mart scheduling policies and computer generated reports that did not adjust for "overnight" shifts. For example, Wal-Mart's policy provides, in part, that employees should not be scheduled to work more than six (6) consecutive days so that they have at least one day off during a seven day period. The system is relatively straight-forward for employees who begin and end their shift on the same day and an employee beginning at 7:00 a.m. and ending at 3:00 p.m. could work six consecutive days, Monday through Saturday with Sunday off. However, "overnight" employees work a shift beginning at 10:00 p.m. and ending at 7:00 a.m the next morning. Because the first shift covers two calendar days (Sunday night and Monday morning), an "overnight" employee working six consecutive shifts would show up in Wal-Mart's computer as having worked seven consecutive days and generate an exceptions report. Because plaintiff managed the "overnight" shift, she was criticized for the exceptions and told to "keep her employees off the report." In an effort to comply with this instruction, plaintiff instructed the employee to "punch in" after 12:00 a.m. The employee was paid for the eight hours he worked without generating an exceptions report.

Regional Personnel Assistant to plaintiff).   To bolster her allegations concerning management training, plaintiff seeks production of "Time Adjustment Request Sheets for manager trainees" from February 28, 2002 through June 29, 2002.  Wal-Mart objects to the request and plaintiff moves to compel.

Wal-Mart argues that the discovery request (1) seeks irrelevant materials, (2) is overly broad and (3) is unduly burdensome.  The court agrees.  Although "relevance" is liberally construed in the context of discovery, the scope of discovery is not without limits.  Plaintiff argues that the instruction she received in 2002 to **not** clock in on Sundays is similar to her 2007 conduct which Wal-Mart contends is gross misconduct; therefore, the requested information is relevant.

The problem with plaintiff's argument is twofold.  First, the 2002 letter does not say that plaintiff's Sunday work hours should/would be inaccurately recorded.  Instead, the 2002 letter provides:

> You need to clock in and out during work hours and lunches.  This is for your protection against being overworked or not getting paid for any overtime hours worked over the guaranteed 8 hours each week. This is also to keep track of your days worked, and it is the law.

> Check your hours every week ending to ensure that you did, in fact, receive the expected and guaranteed hours.  If you see that you do not have all required hours (48), go to the Personnel Manager and turn in a time adjustment.  ***If you work on Sunday, do not clock in.  Have the Personnel Manager set in your hours from Sunday for you.*** You do not receive Sunday differential.  You do not receive any holiday, sick, personal, or vacation pay.  ***If you should miss time, have your hours set in for you for the time missed,*** and the reason why. ***If you are sent to another location to help out, call your Personnel Manager and have your hours set in for the time worked*** that week.

This should only happen when you are out of the store.  Failure to clock in and out affects your annual salary.  (Emphasis added).

The 2002 instruction to plaintiff to have certain hours manually "set in" by a Wal-Mart's Personnel Manager is materially different from the action taken by plaintiff as an assistant manager.[2]

More importantly, Wal-Mart adopted a Payroll Integrity Policy, PD-29, *effective March 1, 2004*, which provides, in relevant part:

> Associates will be credited with all hours worked or other compensable time *on the date the work was performed or the date for which the compensable time was requested and approved to be used.*  An Associate who deliberately *fails to record or instructs others not to record* and/or make payment of compensable time during a pay period *will be subject to disciplinary action up to and including termination.*
>
> Any Associate, hourly or salaried, *who knowingly falsifies payroll records is subject to disciplinary action up to and including termination.*
>
> * * *
>
> Using current payroll procedures, Associates will be credited with compensable time ... *on the date the work was performed or the date for which compensable time was requested and approved to be used.*
>
> * * *
>
> Allegations of payroll manipulation will be thoroughly investigated.  If it is determined that compensable benefit time or *hours worked were intentionally altered, in any manner, the responsible*

---

[2] Plaintiff avoided the exceptions report by instructing the employee, who began working at 10:00 p.m., to wait until shortly after 12:00 a.m. to "punch in" on the time clock.

*Associate(s) will be terminated.*

\* \* \*

Any Associate who ***deliberately falsifies his/her own or another payroll record will be terminated.***

\* \* \*

***Any salaried member of management who is knowledgeable of and fails to correct it appropriately or directs inappropriate payroll manipulation will be terminated.***

***Inappropriate payroll manipulation*** will be considered ***Gross Misconduct*** and will be ***grounds for immediate termination.*** An Associate (hourly or salaried) terminated for this reason will not be eligible for rehire. (Emphasis added).

Regardless of the training provided to plaintiff in 2002, Wal-Mart's March 2004 Payroll Integrity Policy imposed rigid payroll standards for both "Associates" and managers. Accordingly, discovery concerning payroll practices in 2002 has little, if any relevance, to Wal-Mart's post-2004 payroll record keeping policies and practices.[3]

The court is also persuaded that plaintiff's discovery request is overly broad because

---

[3]

Obviously, discovery as to whether Wal-Mart applied the payroll policies in effect in 2007 consistently to both minority and non-minority employees would be relevant. However, the motion to compel is limited to 2002 practices and records.

Wal-Mart also argues that the requested Time Adjustment Requests ("TAR") are not reasonably calculated to lead to the discovery of admissible evidence because the TAR forms show time worked and nothing else. The court has reviewed the 2006 TAR forms provided by Wal-Mart and agrees that they contain limited information. However, the completeness of the 2002 records is unclear. Because the court's relevance ruling is based on Wal-Mart's 2004 payroll policy, it is unnecessary to resolve this argument.

it seeks records that are not limited to the position held by plaintiff at the time of her termination.[4]  In addition, the request is unduly burdensome.  Because Wal-Mart does not have a specific job description called "management trainee," it would have to reconstruct a list of Associates who were in management training within the designated time frame.  After the Associates were identified, Wal-Mart would have to identify the store where the Associate worked and then search boxes in an out-of-state storage facility for the TAR forms and then match the trainee names with the forms.  Such an undertaking is unduly burdensome, given the nature of this case and the lack of relevance of the 2002 TAR forms.  Accordingly, plaintiff's motion to compel shall be DENIED.

### Wal-Mart's Motion for a Protective Order

Plaintiff served a Rule 30(b)(6) deposition notice asking Wal-Mart to designate a corporate representative to provide testimony concerning six topics.  The first topic sought explanation and clarification of various "Attendance Tracking Exceptions" reports for plaintiff and Jeff Livingston (another assistant manager) during September 2006.  In addition to seeking information concerning the nature of the reports, plaintiff requested testimony responsive to the following question:

> 1(D)   Is the summary attached as Exhibit A accurate and complete?
> If not, in what ways is it not accurate or complete.

---

[4]

The scope of discovery may be broader than plaintiff's job classification and/or the decision-makers involved in her termination if an appropriate showing is made. However, plaintiff has not made a sufficient showing for a broader scope of discovery.

Exhibit A is a two-page exhibit created by plaintiff's counsel summarizing 400 pages of "Attendance Tracking Exceptions" reports for plaintiff and Livingston during September 2006.  Wal-Mart moves for a protective order excusing it from designating a witness to respond to question 1(D).   As explained below, the motion shall be DENIED.

Wal-Mart argues that the request is unduly burdensome because it will require a corporate representative to review "400+ documents" to determine whether the summary is "accurate."  The court is not persuaded that a review of the 400 documents to determine whether plaintiff's summary is inaccurate is unduly burdensome.[5]   Accordingly, this argument is rejected.

Wal-Mart contends that the request seeks irrelevant information.  Specifically, Wal-Mart argues that the discovery request is not likely to lead to the discovery of admissible evidence because plaintiff's September 2006 verbal coaching "had nothing to do with her termination."  However, Wal-Mart's *factual assertion* concerning *the significance* of the September 2006 verbal coaching is not dispositive of the discovery issue before the court. Evidence that a supervisor treated a minority employee more harshly than a similarly situated non-minority employee is one method for showing discrimination or pretext.

Wal-Mart also argues that plaintiff only received a "verbal coaching" in September

---

[5]

Wal-Mart also argues that it should not be asked to check the accuracy of plaintiff's summary.  The court would excuse Wal-Mart from providing a Rule 30(b)(6) witness if Wal-Mart agrees not to challenge the accuracy of plaintiff's summary of the 400 pages.  However, the court will not permit Wal-Mart to refuse to answer the question and later attack the accuracy of the summary.

2006 and, because "verbal coaching" does not rise to the level of an "adverse employment action," Wal-Mart's conduct in September 2006 is irrelevant to the issue of retaliation. However, Wal-Mart's narrow relevance argument is not persuasive.  In essence, Wal-Mart argues that evidence of retaliation in the context of a discrimination case is not discoverable unless it rises to the level of an "adverse employment action."  However, plaintiff is entitled to discover whether Wal-Mart treated her more harshly than similarly situated non-minority employees.  Wal-Mart's second "relevance" argument is misguided and summarily rejected.[6]

Finally, Wal-Mart argues that the terms "accurate" and "complete" are impermissibly vague.  The court does not agree that the term "accurate" is vague.  However, the court agrees that asking an opposing party to indicate whether a summary ***prepared by plaintiff's counsel*** is "complete" raises ambiguities.  Plaintiff explains that the word "complete" is used only to confirm that there are no other reports beyond the 400 pages provided to plaintiff. With this clarification, the argument that the request is impermissibly vague is rejected.


**IT IS THEREFORE ORDERED** that plaintiff's motion to compel (**Doc. 41**) is **DENIED.**

**IT IS FURTHER ORDERED** that Wal-Mart's motion for a protective order (**Doc.**

---

[6]

Wal-Mart argues in its reply brief that plaintiff cannot establish that the decision-maker who disciplined plaintiff in September 2006 (store manager Paul Wilkins) or the decision-maker who terminated plaintiff in February 2007 (market manager Pat O'Nelio) had any knowledge of alleged misconduct by another associate.  The court declines to consider an argument raised for the first time in a reply brief

**45**) is **DENIED.**

**IT IS SO ORDERED**.[7]

Dated at Wichita, Kansas this 13th day of January 2009.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[7]

    The rulings herein are limited to discovery and the liberal standard for relevance. Wal-Mart raises a number of arguments concerning the merits of plaintiff's claims and evidence.  The rulings herein are without prejudice to future arguments which may be made in the context of dispositive motions or during trial.